IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No.: 7:17-cv-226

| | |
|---|---|
| RAVELLE PEARSALL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| DELTA CAREER EDUCATION | ) |
| CORPORATION, | ) |
| | ) |
| Respondent. | ) |

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner RaVelle Pearsall ("Petitioner" or "Ms. Pearsall") respectfully petitions this Court for confirmation of an arbitration award in her favor against Respondent Delta Career Education Corporation ("Respondent" or "Delta") and for entry of judgment in conformity with this award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9 and 13.

### II. PARTIES, JURISDICTION, AND VENUE

1. Petitioner is a resident of Mecklenburg County, North Carolina.

2. Respondent Delta Career Education Corporation is, and at all relevant times was, a Delaware Corporation. Delta owns and operates Miller-Motte College in Wilmington, NC.

3. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

4. Venue is proper in the Eastern District of North Carolina, Southern Division, pursuant to 28 U.S.C. § 1391(b) as this is the judicial district where Pearsall last worked for Respondent, the district where Respondent operates Miller-Motte College, and the judicial district in which the arbitration took place pursuant to the Agreement.

### III. FACTUAL STATEMENT

5. Ms. Pearsall went to work for Respondent at its Miller-Motte College in Wilmington, North Carolina on or about March 23, 2012. Ms. Pearsall received favorable evaluations thereafter and was very popular with the students.

6. She was summarily fired in April 2015 based on her race after receiving just a single disciplinary warning. White employees received many more chances and were disciplined in a more lenient, forgiving manner than was Ms. Pearsall—the only African-American in the Cosmetology Department.

7. Ms. Pearsall's supervisor was unkind to her from the minute they met. Ms. Pearsall complained about race discrimination to Respondent's management, but they did nothing. Even students noticed the disdainful way Ms. Pearsall's supervisor treated her and spoke about her, including at one point rolling her eyes after Ms. Pearsall had walked away from a conversation and saying "What a monkey!"

8. Ms. Pearsall's supervisor also called Ms. Pearsall's baby "a monkey … just like her mother" and sent text messages using the word "nigger".

9. Respondent's discrimination caused Ms. Pearsall to experience and seek medical treatment for a "racing" heart, anxiety, stress, tightness of breath, crying spells, and high blood pressure. Ms. Pearsall had always prided herself for being a hard worker who could provide for

2

Case 7:17-cv-00226-FL   Document 1   Filed 11/27/17   Page 2 of 7

her family, which made the negative workplace experience and her termination even more devastating. Respondent's termination also resulted in depletion of Ms. Pearsall's life savings, her utilities being turned off, and ongoing despair for Ms. Pearsall over not being able to provide for her children. Ms. Pearsall frequently cried during this time, lost weight, drifted off in the middle of conversations, had digestive problems, and expressed fear that she would not be able to provide for her children.

10. Pursuant to Section 9 of Pearsall's Employment Acknowledgment ("Agreement"), signed on March 29, 2014, the parties arbitrated Pearsall's claims for race discrimination. (Exhibit 1: Arbitration Agreement.) Ms. Pearsall filed her demand for arbitration August 26, 2016. (Exhibit 2: Arbitration Demand.)

11. The Honorable Carl Horn, III, was agreed upon by the parties and duly appointed to arbitrate this matter. (Exhibit 3: Appointment Emails.) A copy of the Report of Arbitration Management Conference and Scheduling Order is attached. (Exhibit 4: Scheduling Order.)

12. The Agreement provided that arbitration is "the parties' exclusive remedy," that arbitration shall be conducted pursuant to the employment rules of the American Arbitration Association, and that the Federal Arbitration Act shall govern all proceedings relating to the Agreement. (Exhibit 1 at §§ 9, 9(o), 15.) The Agreement further provided that the arbitration must take place within the federal judicial district in which the employee was last employed by Respondent. (*Id.* at § 9(f).) Petitioner was last employed by Respondent in Wilmington, North Carolina. Accordingly, the arbitration of this matter was held in the Eastern District of North Carolina in the offices of Respondent's legal counsel, then located at 434 Fayetteville St., Raleigh, NC, United States.

13. The arbitration hearing spanned four days and included testimony from ten witnesses.

14. On October 29, 2017, the arbitrator issued an award in Ms. Pearsall's favor, finding that Respondent discriminated against Ms. Pearsall on the basis of her race in violation of Title VII and the North Carolina Equal Employment Practices Act. (Exhibit 5: Arbitration Award at 16.) The arbitrator awarded Ms. Pearsall three hundred twenty-four thousand six hundred fifty dollars and sixty-eight cents ($324,650.68) in damages, attorney's fees, and compensable costs as a result. (*Id.* at 17-18.)

15. Pursuant to Section 42(c) of the parties' chosen American Arbitration Association rules, the parties "shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction." (Exhibit 6: AAA Rules.) Section O of the Agreement likewise provides that "Any award may be entered as judgment in any court of competent jurisdiction." (Exhibit 1: Arbitration Agreement.)

16. To date, Respondent has not complied with the Award and has failed to pay the full sum awarded to Petitioner. In fact, Respondent's counsel has completely ignored Petitioner's repeated emails inquiring about Respondent's intent to comply with the Award. (Exhibit 7: Emails to Respondent Counsel on 10/30/17 and 9/6/17.)

17. Petitioner is entitled to confirmation of the Award and entry of judgment in conformity with the Award pursuant to Sections 9 and 13 of the Federal Arbitration Act and Section O of the Agreement.

18. Petitioner asks that this Court further award her costs and attorney's fees for having to file this confirmation petition because of Respondent's failure to abide by its own arbitration policy. North Carolina federal courts have awarded attorney's fees and costs to the prevailing

party in arbitration enforcement proceedings under the Federal Arbitration Act in light of the North Carolina Arbitration Act. *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 653 (M.D.N.C. 2016) (relying on N.C. Gen. Stat. Ann. § 1-569.25 and the Federal Arbitration Act). As the Court observed in *Astanza Design, LLC*:

> [F]ederal courts have found it consistent with the purpose of the FAA to award attorneys' fees for litigation commenced to confirm or vacate an arbitration award under the FAA, even under their inherent powers. . . .
>
> [The North Carolina Arbitration Act's] express allowance for an award of attorneys' fees to [petitioner] in connection with its efforts to confirm the arbitration award and oppose Defendants' motion to vacate, modify, or correct the award are consistent with the purposes of the FAA and should be given effect. The [North Carolina Arbitration Act] expressly authorizes an award of reasonable attorneys' fees to the "prevailing party." The Uniform Law Comment provided with the statute notes that the provision is designed to promote the statutory policy of finality of arbitration awards by allowing recovery of expenses and fees to the prevailing party in contested judicial actions precisely like the present and thereby to discourage all but the most meritorious challenges of arbitration awards.

*Id.*

The Court can also award attorney's fees and costs pursuant to Title VII and Section 1981, which provide for such fees "[i]n any action or proceeding" to enforce their provisions. *Cf. Smith v. La Cote Basque*, 519 F. Supp. 663, 666 (S.D.N.Y.), *dismissed sub nom. Smith v. Basque*, 681 F.2d 802 (2d Cir. 1981) (holding an award of a reasonable attorney's fee appropriate because courts have consistently given a liberal construction to the attorneys' fees provision of Title VII).

19. Petitioner asks that this Court further award her interest on the Award in the amount of 8% per annum from the date of the Award through the date judgment is entered. *See* N.C. GEN. STAT. 24-1; *Wichard v. Suggs*, 95 F. Supp. 3d 935, 947 (E.D. Va. 2015) (holding that there is a presumption in favor of awarding post-award, prejudgment interest.)

5

20. Petitioner asks that this Court further award her post-judgment interest on the Award as provided by 28 U.S.C. § 1961 through the date judgment is satisfied.

## **RELIEF DEMANDED**

WHEREFORE, the Petitioner prays the Court to:

1. Enter an Order confirming the Award against Respondent;

2. Enter judgment against Respondent for the sum of $324,650.68, plus interest;

3. Award Petitioner her costs and attorney's fees incurred in this proceeding; and

4. Granting such other and further relief as the Court deems proper.

This the 27th day of November, 2017.

                                                 */s/ Kevin P. Murphy*
Kevin P. Murphy
North Carolina Bar No. 41467
Sean F. Herrmann
North Carolina Bar No. 44453
Van Kampen Law, PC
315 East Worthington Avenue
Charlotte, North Carolina 28203
Phone: (704) 247-3245
Fax: (704) 749-2638
Email: kevin@vankampenlaw.com
       sean@vankampenlaw.com
*Attorneys for Claimant*